IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MICHAEL DENNIS ROELLE )
)
v. ) No. 3:19-0993
)
ANDREW M. SAUL )
Commissioner of Social Security )

**To:** The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry ("DE") 22), to which Defendant has filed a response. (DE 23.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (DE 6.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (DE 22) be **DENIED**.

## I. INTRODUCTION

Plaintiff filed an application for DIB on December 12, 2016, in which he asserted that he was unable to work due to sleep apnea, arthritis, degenerative disc disease, a disc bulge, peripheral neuropathy, carpal tunnel syndrome, diabetes, and hypertension. (*See* Transcript of the

Administrative Record (DE 16) at 62-63.)[1] He alleged a disability onset date of October 29, 2013. (AR 62.)

Plaintiff's applications were denied initially and upon reconsideration. (AR 62, 75.) Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Robert Martine on June 8, 2018. (AR 26.) On August 28, 2018, the ALJ denied the claim. (AR 9-11.) On September 6, 2019, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed and this Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since October 29, 2013, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: right shoulder disorder post surgical repair; cervical degenerative disc disease with mild to moderate degenerative changes; and diabetes mellitus (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), as follows: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in an 8-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds;

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

2

occasionally stoop, crouch, kneel, crawl, and balance; cannot reach overhead with the right upper extremity; and must avoid concentrated exposure to work around hazardous machinery, moving parts, vibrations, and work at unprotected heights.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 18, 1965, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 29, 2013, through the date of this decision (20 CFR 404.1520(g)).

(AR 14-21.)

### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSION AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the

3

process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. § 404.1520(a)(4). At step one, the claimant must show that he is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step four, the ALJ considers the claimant's residual functional capacity ("RFC") and determines whether the claimant can still perform past relevant work; at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id*.

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id*. § 404.1520(a)(4)(iv). "Past relevant work" is defined as "substantial gainful activity" that a claimant has done within the past 15 years and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). If the claimant is unable to perform past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. *Id*. § 404.1520(a)(v). In evaluating a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court is required to accept the ALJ's explicit findings and ultimate determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

**B. The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved the Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in

20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed him to perform light work with express limitations to account for his severe impairments, and that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers, through the date last insured, in the national economy that Plaintiff could perform. (AR 14-21.)

### C. Plaintiff's Assertions of Error

Plaintiff's alleges that the ALJ erred by (1) failing to properly evaluate the medical opinions in the administrative record, and (2) improperly discounting the credibility of Plaintiff's allegations regarding the severity of his alleged symptoms. (DE 21 at 11.) Plaintiff therefore requests that this case be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. (*Id*. at 24.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court addresses Plaintiff's assertions of error below.

6

**1. The ALJ's evaluation of the medical evidence.**

Plaintiff first contends that the ALJ committed reversible error by assigning an RFC that is not supported by the medical evidence of record. The RFC is an assessment of an individual's ability to perform work-related activities in light of any functional limitations caused by the individual's physical and mental impairments. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). In formulating the RFC, the ALJ is required to consider all relevant evidence, including medical records, any medical opinions from treating or non-treating providers, and the individual's own allegations regarding the severity of his or her functional limitations. *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 668 (6th Cir. 2009). An opinion from a treating source as to the individual's physical or mental functionality is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).[2] However, if the ALJ does not give controlling weight to the opinion, the ALJ must provide "good reasons" for the ALJ's decision that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion." *Helm v. Comm'r of Soc. Sec.,* 405 F. App'x 997, 1000 (6th Cir. 2011) (internal citation omitted).

Dr. Jorge Droz is an internist who provided a treating source opinion on March 28, 2018. (AR 1501-04.) Dr. Droz opined that Plaintiff's various physical conditions, which include gastroesophageal reflux disease ("GERD"), diabetes mellitus ("DM"), hypersensitivity lung disease ("HLD"), and chronic back and neck pain, would cause numerous severe functional

---

[2] This provision, known as the "treating physician rule," applies to all social security claims filed before March 27, 2017 (*see* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017), such as the instant one.

7

limitations that include the following: lifting and/or carrying no more than 10 pounds on an occasional basis, sitting no more than six hours during an eight-hour workday, standing and/or walking for less than one hour per eight-hour workday, and occasional reaching, handling, fingering, feeling, pushing, and pulling. (AR 1502-03.)[3] Dr. Droz also found that Plaintiff would be "off task" for more than 25% of an eight-hour workday due to his symptoms, that Plaintiff would require the use of both a cane and a back brace, and that Plaintiff would need to lie down or recline every one to two hours during an eight-hour workday, for 20 to 30 minutes each time. (AR 1501-02.)

Although the ALJ accorded "[g]reat weight" to Dr. Droz's six-hour sitting limitation, the ALJ rejected the remaining portions of the opinion:

> Based on Dr. [Droz]'s address on the [treating source opinion], he is a doctor with the VA, and VA treatment records consistently fail to document gait abnormalities or any symptom that would support such extreme limitations. Dr. [Droz] cites to moderate degenerative changes in MRI; however, imaging is generally unremarkable with mild to moderate findings in the cervical spine [] and [there is] no imaging of the lumbar spine. The claimant testified that he has had no recent treatment for low back pain.

(AR 18-19.)[4] Plaintiff argues that these reasons are "legally insufficient and factually inaccurate" and thus contends that remand is necessary for further consideration. (DE 21 at 16.)

Upon review of the record, the Court finds that the ALJ's decision to accord minimal weight to Dr. Droz's opinion is supported by substantial evidence. As an initial matter, the Court questions whether Dr. Droz can reasonably be considered a "treating physician" for purposes of

---

[3] The form completed by Dr. Droz defines "occasional" as "6% to 33% of an 8-hour workday." (AR 1501.)

[4] The ALJ mistakenly identifies Dr. Droz as "Dr. Jose Diaz" throughout the administrative opinion. (AR 18-19.) Dr. Droz is identified elsewhere in the administrative record as "Dr. Jorge Drozbermudez." (AR 1688.)

8

20 C.F.R. § 404.1527(c)(2). As noted by Defendant, the extent of Dr. Droz's treatment at the time his opinion was issued appears to have consisted of two testosterone injections — one on February 22, 2018 and one on March 8, 2018 (AR 1668, 1688) — and a visit on March 2, 2018 relating to bronchitis. (AR 1680.) It is in fact unclear from the record whether Dr. Droz treated Plaintiff for any of his allegedly disabling conditions. This is not necessarily the type of "ongoing treatment relationship" contemplated by the regulations or accepted by courts in this circuit. *See* 20 C.F.R. § 404.1527(a)(2) (noting that a treating source is established "when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)"); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506-07 (6th Cir. 2006) ("[D]epending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship.").

Even assuming Dr. Droz qualifies as a treating source, the ALJ cited ample evidence to discount his opinion, including the consistently normal gait findings documented in Plaintiff's treatment notes, particularly at the time that Dr. Droz issued his opinion. (AR 1670-71, 1674, 1683, 1686, 1691). Such evidence directly contradicts Dr. Droz's finding that Plaintiff cannot stand or walk for even one hour during an eight-hour workday. (AR 1502.) The ALJ also highlighted the "mild to moderate" degenerative changes at the C5-6 level demonstrated in an MRI from September 2017 (AR 1678), which tends to support the ALJ's RFC findings. *See Downs v. Comm'r of Soc. Sec.*, 634 F. App'x 551, 553 (6th Cir. 2016) (noting that "mild-to-moderate findings and no significant degeneration" supported ALJ's finding that claimant could perform light work). Finally, the ALJ referenced the absence of treatment for Plaintiff's alleged physical symptoms over the last several years (AR 15, 19), which similarly bolsters the ALJ's RFC. *See*

9

*White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (noting that a reasonable mind could find that lack of treatment during the relevant time period "indicated an alleviation of [the claimant's] symptoms"); *see also Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013) (holding that conservative treatment "suggests the absence of a disabling condition"). The ALJ thus provided a "clear understanding of the reasons for the weight given a treating physician's opinion," as is required. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010).

Plaintiff attempts to rebut such evidence by citing medical visits during which he complained of problems with his gait and pain in the neck, back, and lower extremities. (DE 21 at 19.) However, such citations do not demonstrate that the ALJ's conclusions were not supported by substantial evidence, which is the burden Plaintiff must carry here, *see Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.") (citing *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005)), but instead suggest an overall inconsistent presentation of symptoms. For example, Plaintiff cites a note from February 2016 indicating that he complained of neck pain, yet the same note demonstrates that Plaintiff "ambulated … unassisted with a steady, quick gait," denied "any significant gait instability," exhibited a full range of motion in the cervical spine, and possessed full strength in all upper extremities. (AR 375-78.) Plaintiff similarly points to a notation from a September 2017 visit indicating that his gait and stance were "abnormal" (AR 1853), yet in addition to findings of "no back pain" and normal motor strength in the upper extremities, a functional examination performed during the same visit yielded a finding that Plaintiff's mobility "was not limited." (AR 1852.)

The Court notes several other questionable citations proffered by Plaintiff in support of his argument. Plaintiff references numerous records documenting his treatment with Dr. James

10

Anderson in 2015 that are mostly indecipherable and do not, as Plaintiff suggests, demonstrate consistent gait and stance abnormalities. (AR 1515-58.) The few legible notes from this provider instead indicate that Plaintiff complained of "difficulty walking" on two occasions but specifically denied any walking problems during two other encounters. (AR 1543, 1548, 1552, 1557.) Plaintiff relies on a diagnosis of "ataxia" included in several records from this period, but the presence of this diagnosis in these records does not necessarily correlate with gait abnormalities.[5] For example, Dr. Anderson includes an "ataxia" diagnosis in an office note from June 30, 2015 (AR 1550), yet Plaintiff denied any problems with walking or balance during the same office visit. (AR 1552.)

Plaintiff also cites a radiology report from February 22, 2017 to argue that an orthopedic surgeon "recommended no lifting, gentle range of motion and limited active range of motion." (DE 21 at 19.) The report in question contains no such recommendation, however, but rather a report of imaging studies of Plaintiff's right knee revealing only "minimal osteophyte formation" and "slight narrowing of the lateral patellar joint space." (AR 1356.) Finally, despite Plaintiff's citation to a note from October 14, 2016 to demonstrate the existence of ongoing neck, back, and knee pain (DE 21 at 19), a physical exam on this date actually revealed a full range of motion in the neck, a normal gait, and normal motor and sensory functioning. (AR 266.)

Plaintiff relies on other records that, when viewed in a broader context, fail to support the severity of the restrictions suggested by Dr. Droz. Plaintiff cites a note from October 30, 2017 indicating that his "mobility was limited." (AR 1831.) However, even if the fact that the same note also shows "no gait abnormality" (AR 1830) is ignored, Plaintiff demonstrated no gait problems just days before. (AR 1835, 1838, 1848-49). Similarly, Plaintiff points to a May 21, 2018 visit

---

[5] Ataxia is defined as "failure of muscular coordination; irregularity of muscular action." Elsevier Saunders *Dorland's Illustrated Medical Dictionary* 170 (32nd ed. 2012).

11

during which he used a cane to ambulate due to pain in his foot caused by a "small spur" (AR 2400, 2403), but he exhibited no gait or mobility problems during other visits immediately before and after this one. (AR 2391, 2425.) Thus, contrary to Plaintiff's assertion otherwise, the ALJ appropriately relied on the mild findings that pervade the administrative record to discount the severity of Dr. Droz's opinion. *See Brock v. Comm'r of Soc. Sec.*, 368 F. App'x 622, 625 (6th Cir. 2010) (noting that a treating physician's opinion that is not consistent with the record as a whole is not entitled to controlling weight).[6]

Plaintiff next finds fault with the ALJ's assessment of the opinion provided by Dr. William Robinson, who performed a consultative examination on August 20, 2016. (AR 255-59.) Dr. Robinson concluded that Plaintiff would be subject to several physical restrictions due to neuropathy, back pain, obesity, and "difficulty walking." (AR 258-59.) Dr. Robinson opined that, during an eight-hour workday, Plaintiff would be limited to lifting 20 pounds for two hours and 10 pounds for four hours, carrying "about" 15 pounds for two hours and five pounds for four hours, sitting for four hours, and standing and walking for two hours. (AR 258-59.) Dr. Robinson also opined that Plaintiff "would be unsteady" when walking and would require a back brace and hand braces. (AR 258-59.)

The ALJ accorded "great weight" to the lifting and carrying restrictions suggested by Dr. Robinson but gave no weight to the limitations pertaining to sitting, standing, and walking. (AR 18.) The ALJ cited the normal findings derived during Dr. Robinson's examination, including negative results from straight leg raising tests, Romberg testing, Tinel's testing, and Phalen's

---

[6] The Court is not inclined to list every medical visit or exam during which Plaintiff exhibited a normal gait. However, Defendant's brief appropriately cites the myriad of records demonstrating such normal findings (DE 23 at 7, 15), which further bolster the ALJ's justification for discounting Dr. Droz's opinion.

12

testing, as well as normal strength in both the upper and lower extremities. (AR 257-58.) The ALJ also acknowledged Dr. Robinson's observation that Plaintiff exhibited an "ataxic gait" during his examination but emphasized the "lack of gait abnormalities" throughout the relevant period. (AR 18.)

Plaintiff argues that the ALJ's adoption of Dr. Robinson's lifting/carrying restrictions involved an erroneous assumption that such limitations – lifting 20 pounds for two hours and 10 pounds for four hours, carrying 15 pounds for two hours and five pounds for four hours – fall within the regulatory parameters of "light work." Light work entails the ability to lift no more than 20 pounds "at a time" and carry 10 pounds "frequently." 20 C.F.R. § 404.1567(b). While the phrase "at a time" is not defined in the regulations, the ALJ in this case limited Plaintiff to "occasional" lifting of 20 pounds, (AR 16), which is defined as occurring "up to one-third of the time," while "frequently" is defined as occurring "from one-third to two-thirds of the time." Social Security Ruling 83-10, 1983 WL 31251, at *5-6 (January 1, 1983). Dr. Robinson's lifting and carrying limitations thus appear to be accommodated by the RFC.

Still, Plaintiff takes issue with the ALJ's failure to acknowledge that Dr. Robinson's carrying and lifting restrictions are "far more specific" than those included in the RFC. (DE 21 at 16-17.) The Court first notes that the sentence in the administrative opinion immediately preceding the weight allocated to Dr. Robinson's opinion describes the opinion as one concluding that Plaintiff could lift and carry "at the light exertional level." (AR 18.) This is consistent with the ALJ's decision to grant "great weight" to the opinions of two non-examining state physicians who similarly found that Plaintiff could perform at the light exertional level (AR 59-60, 70-72.) It appears that the ALJ simply failed to incorporate the exact language employed in Dr. Robinson's proposed lifting/carrying opinion – namely the somewhat ambiguous limitation to "about"

13

15 pounds for two hours and five pounds for four hours – that do not directly correspond to the Commissioner's definitions with respect to exertional abilities.

Second, there is no inconsistency in the ALJ's decision to give "great weight" to Dr. Robinson's lifting/carrying limitations without adopting the precise contours of Dr. Robinson's opinion. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."). The ALJ is instead allowed to elicit testimony from a vocational expert, as he did in this case, "in response to an accurate hypothetical represents substantial evidence that the claimant has the vocational qualifications to perform specific jobs." *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428-29 (6th Cir. 2014) (internal citations omitted). In fashioning such a hypothetical to the vocational expert, the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987)). Therefore, the only issue is whether the ALJ "adequately portray[ed]" Plaintiff's impairments to the vocational expert in asking such hypotheticals. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal citation omitted).

The Court finds that the ALJ did provide an accurate portrayal of Plaintiff's impairments to the vocational expert in this case. During the administrative hearing, the ALJ presented various hypotheticals based on the medical opinions in the record, to which the vocational expert either provided a set of jobs that an individual with such limitations would be able to perform or confirmed that the limitations at issue would preclude employment. (AR 44-47.) Plaintiff's counsel did not object to these hypotheticals as mischaracterizations of any provider's opinion. The Court

14

therefore finds no reversible error in the ALJ's discussion of Dr. Robinson's opinion or in the lifting/carrying limitations included in the RFC.

Nevertheless, Plaintiff cites two Sixth Circuit opinions, *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) and *Friend*, *supra*, to support his claim that the ALJ erred by accepting some of Dr. Robinson's proposed limitations and rejecting others without adequately explaining the basis for such decisions. (DE 21 at 17.) The Court first notes that the passages relied on by Plaintiff address an ALJ's failure to provide good reasons for rejecting a *treating physician's* opinion. *See Wilson*, 378 F.3d at 544 (explaining the policy behind the treating physician rule). *See also Friend*, 375 F. App'x at 550-51 (same). In contrast, Dr. Robinson is merely an examining physician and his opinion enjoys no such procedural safeguard. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) ("[B]ecause Dr. Catt was an examining psychologist— not a treating doctor—his opinion is not entitled to any special deference."). *See also Conley v. Astrue*, No. 3:07-1080, 2009 WL 334644, at *13 (M.D. Tenn. Feb. 9, 2009) ("The undersigned cannot find reversible error in the ALJ's failure to specifically delineate his reasoning with respect to certain postural and environmental limitations assessed by Dr. Davis, a government consultant who examined plaintiff on only one occasion."). Additionally, the ALJ *did* explain his rationale for rejecting Dr. Robinson's sitting and standing/walking limitations. As previously discussed, the ALJ noted that the examiner's own testing and the overwhelming absence of gait abnormalities in the administrative record undermined the severity of these restrictions. (AR 18.) This is an adequate explanation of the ALJ's decision. *See Brown v. Soc. Sec. Admin.*, No. 3:14-1451, 2015 WL 5098715, at *5 (M.D. Tenn. Aug. 31, 2015), *report and recommendation adopted*, 2015 WL 5559917 (M.D. Tenn. Sept. 18, 2015) ("This inconsistency between a physician's opinion and the

treatment notes upon which that opinion is based, as well as with the balance of the medical record, is sufficient reason to discount the weight of an examining source.").

Plaintiff still broadly suggests that the ALJ was not permitted to rely on the records documenting Plaintiff's visits with Drs. Droz and Robinson to discount their opinions because these providers "were obviously aware of the content of *their own treatment and examination notes* when they formulated their opinions[.]" (DE 21 at 17) (emphasis in original.) This is flatly incongruent with Sixth Circuit precedent, however, which holds that any opinion that lacks support in the record – including one provided by a treating physician – may be rejected on such grounds. *See, e.g., Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 584 (6th Cir. 2010) ("Because the record adequately supports the finding that [the treating physician's] medical opinion was not supported by her own treatment notes and was inconsistent with the record as a whole, the ALJ was warranted in discrediting her opinion.").

Plaintiff makes much of the ALJ's statement that physical examinations between 2013 and 2016 revealed no gait abnormalities. (AR 18.) While Plaintiff is correct that he did in fact report *some* walking problems during this period, the vast majority of the medical records spanning this period include mild physical examination findings that suggest that such issues were temporary deviations from an otherwise normal gait. Notably, the ALJ explicitly referenced several such records in his opinion. (AR 18.) Therefore, to the extent that the ALJ erred by stating that no gait abnormalities were documented during the relevant time period, such an error is harmless. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016) (holding that an ALJ "properly discussed objective evidence" and therefore any error in misidentifying certain evidence was harmless).

16

Case 3:19-cv-00993   Document 24   Filed 09/29/20   Page 16 of 19 PageID #: 2607

As long as an ALJ's decision is supported by substantial evidence, "reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir.2005)). The ALJ in this case appropriately discussed the medical evidence of record before adopting only those limitations into the RFC that he found to be legitimate, as was his duty. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d at 1235. The Court therefore finds that substantial evidence supports the ALJ's RFC. Plaintiff's assertion of error is rejected.

**2. Plaintiff's Credibility.**

Plaintiff next argues that the ALJ erred by concluding that his allegations regarding the severity of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 17.) Plaintiff's argument necessarily triggers an analysis under Social Security Ruling ("SSR") 16-3p, which requires the ALJ to consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms" and "evaluate whether the statements are consistent with objective medical evidence and other evidence." 2017 WL 5180304, at *6 (October 25, 2017).[7]

Plaintiff does not dispute any particular aspect of the ALJ's credibility findings, but rather faults the ALJ for failing to explicitly discuss his "strong work history," including his position as

---

[7] Under SSR 96-7p, SSR 16-3p's predecessor, the ALJ was directed to make a "credibility" determination based on the claimant's statements about the limiting effects of his alleged symptoms. 1996 WL 374186, at *3 (July 2, 1996). SSR 16-3p does not use the term "credibility," although there appears to be no change to the ALJ's analysis. Courts have noted that the implementation of SSR 16-3p did not abrogate case law pertaining to credibility evaluations under SSR 96-7p, *see Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119, n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character"), and have largely "decline[d] to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical." *Pettigrew v. Berryhill*, No. 1:17-cv-1118, 2018 WL 3104229, at *14, n.14 (N.D. Ohio June 4, 2018), *report and recommendation adopted*, 2018 WL 3093696 (N.D. Ohio June 22, 2018).

17

a staff sergeant in the Army. (DE 21 at 22-23.) The Court notes initially that no regulation or other binding authority mandates that an ALJ mention every piece of evidence contained in the administrative record. *See Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) (internal citation omitted) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."). Moreover, although Plaintiff cites a string of cases standing for the proposition that a good work history may bolster an individual's credibility (DE 21 at 22-23), none of these cases involves a finding of reversible error in an administrative opinion based *solely* on the lack of reference to a claimant's vocational history. The Sixth Circuit has in fact rejected such an argument:

> [The claimant] puts forth no case law supporting his argument that military service requires a heightened level of deference. "[W]ork history" – even commendable military service – "is just one factor among many, and it is not dispositive." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). Thus, because the ALJ's credibility determination was based on her comparison of the medical evidence with [the claimant's] testimony, we do not find that it lacked substantial evidence.

*Joseph v. Comm'r of Soc. Sec.*, 741 F. App'x 306, 312 (6th Cir. 2018).

Similarly, the Court finds no error in the ALJ's credibility determination in this matter despite his failure to specifically mention Plaintiff's work history. The ALJ cited numerous physical activities and consistently normal examination findings to discount Plaintiff's credibility in this matter (AR 18-19), as was appropriate. *See Wilson v. Comm'r of Soc. Sec.*, 618 F. App'x 281, 286 (6th Cir. 2015) (affirming ALJ's credibility determination where claimant's description of symptoms "did not square" with the objective evidence). Given the extremely deferential standard applied to a credibility determination, *see Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) ("While in theory we will not disturb an ALJ's credibility determination without a compelling reason … in practice ALJ credibility findings have become essentially unchallengeable[.]") (internal citations and quotations omitted), the Court finds that

such discussion is sufficient to affirm the ALJ's credibility determination here. Plaintiff's assertion of error is therefore rejected.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (DE 22) be DENIED and the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge